Filed 7/27/15  P. v. Emma CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PAUL EMMA,<br><br>    Defendant and Appellant. | 2d Crim. No. B257905<br>(Super. Ct. No. 2013032491)<br>(Ventura County) |

Paul Emma appeals a judgment entered following his guilty plea to six counts of lewd acts with a child, with a finding that he committed substantial sexual conduct with a child under 14 years old (counts 1 & 4).  (§§ 288, subd. (a), 1203.066, subd. (a)(8).)[1]  We affirm.

*FACTUAL AND PROCEDURAL HISTORY*

During the summer of 2003, eight-year-old S.P. visited her grandmother and Emma, her step-grandfather, in Thousand Oaks.  On two occasions that summer, Emma touched S.P.'s breasts, kissed her on her lips, and touched her vagina.  Emma asked S.P. to keep the molestation secret, stating:  "It's not a big deal.  It's just our little secret."

In 2013, S.P. moved into Emma's home while she attended California Lutheran University.  On one occasion, S.P. was alone with Emma in the home.  He

_____

[1] All further statutory references are to the Penal Code unless stated otherwise.

grabbed her by her waist and hips and rubbed against her. Emma asked if they could be physically intimate because he had enjoyed touching her previously and now she was 18 years old and an adult. S.P. pulled away from Emma and went to the dorm room of a friend. As she left, Emma asked her to "forget everything [he] said and don't tell anyone."

Police officers later monitored a pretext telephone call that S.P. placed to Emma. During the conversation, Emma apologized for his behavior and acknowledged it was wrong. In later police interviews, Emma admitted molesting S.P. as a child and recently asking her to be intimate with him.

On May 29, 2014, the Ventura County prosecutor filed an amended felony complaint charging Emma with six counts of lewd acts with a child and alleging that Emma committed substantial sexual conduct with a child under 14 years old (counts 1 & 4). (§§ 288, subd. (a), 1203.066, subd. (a)(8).) The complaint also alleged that the prosecution was commenced prior to the victim's 28th birthday, pursuant to the limitations period of section 801.1, subdivision (a). Emma then waived his right to a preliminary examination, waived his constitutional rights, pleaded guilty to the six counts, and admitted the special allegations. Orally and in writing, Emma acknowledged that the trial court would order him to pay restitution to his victim. In writing, Emma acknowledged that he was entitled to a judicial determination of the amount of victim restitution, and that restitution would include noneconomic losses, including pain, suffering, and emotional distress. (§ 1202.4, subd. (f)(3)(F).)

In accordance with Emma's plea agreement, the trial court sentenced him to five years in prison, consisting of three years for count 1 and two years for count 4, to be served consecutively. The court sentenced Emma to three-year terms on the remaining four counts, to be served concurrently. The court imposed a $300 restitution fine, a $300 parole revocation restitution fine (stayed), a $240 court security assessment, and a $180 criminal conviction assessment, and awarded Emma 284 days of presentence custody credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

2

*Restitution Evidence at Sentencing Hearing*

During the sentencing hearing, S.P. and her father made statements regarding the psychological harm caused by Emma's crimes. S.P. stated that she had been fearful of Emma's temper and retribution since 2003. She added that when she fled his home in 2013, she feared that he would obtain his firearm and "come after [her]." S.P. stated that the physical and emotional stress of the prosecution forced her withdrawal from the university's academic honors program and placed her scholarship in jeopardy. S.P. was retaking classes and had lost her opportunity for a graduate school scholarship. S.P. also was in counseling, no longer trusted men, felt emotionally scarred, and worried that she could not marry and have a family.

S.P.'s father stated that she had suffered extreme emotional distress: "Numerous times she has been overwhelmed and ready to quit, depressed and angry." S.P.'s parents also were struggling to cover the unanticipated costs of S.P.'s college education and housing, including the loss of a two-year post-graduate scholarship.

Following the statements by S.P. and her father, the prosecutor argued that the trial court should award "$355,000" (*sic*) in victim restitution based upon S.P.'s loss of scholarships, future psychological counseling, and pain and suffering. Emma's counsel objected to the amount as unsupported by a statement of damages. Over the defense objection, the court ordered Emma to pay $350,000 noneconomic restitution to S.P. pursuant to section 1202.4, subdivision (f)(3)(F). (*Ibid.* [noneconomic losses may include psychological harm for felony violations of section 288].) In ruling, the trial judge stated: "I do find and award noneconomic damages to the victim in the amount of $350,000. I do find that is reasonable for the victim's education needs. I do believe the victim when she says that this has had a substantial toll on her and her ability to move forward with her life. I do believe that it will impede her ability because her grades have suffered and that will require her to pay additional costs for her education, and I think those costs ought to be passed on to Mr. Emma."

Emma appeals and challenges the restitution order.

## DISCUSSION

Emma argues that imposition of the $350,000 victim restitution order denied him due process of law because the probation officer did not recommend a specific restitution amount and the probation report stated that the victim's father would submit a written restitution request. Emma points out that the letters from the victim and her family members (attached to the probation report) also did not claim a specific amount of damages. He adds that the oral statements of S.P. and her father made at sentencing were not made under oath. In sum, Emma claims that he had neither notice of the $350,000 amount nor an opportunity to challenge the restitution order.

Emma also claims that the trial court abused its discretion in determining the amount of restitution. He asserts that there is insufficient factual support for the amount awarded.

### I.

The California Constitution provides crime victims with the right to restitution and, consequently, requires the trial court to order a convicted defendant to pay restitution in every case in which a crime victim suffers a loss. (Cal. Const., art. 1, § 28, subd. (b)(13)(B).) To implement this requirement, section 1202.4, subdivision (f) generally provides that in every case in which a victim has suffered economic loss as a result of the defendant's misconduct, the court shall require that the defendant make restitution to the victim in an amount established by court order, based upon the amount of loss claimed by the victim or upon any other showing to the court. (*People v. Giordano* (2007) 42 Cal.4th 644, 651-652.)

Section 1202.4, subdivision (f)(3) requires the restitution to be "a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." Pursuant to subdivision (f)(3)(F), a victim of child molestation also may recover restitution for noneconomic losses, including psychological harm. (*People v. Smith* (2011) 198 Cal.App.4th 415, 431 [noneconomic losses are subjective, nonmonetary losses that include emotional distress, pain, suffering, and humiliation].)

4

A defendant has the right to a hearing in the trial court to dispute the amount of restitution. (§ 1202.4, subd. (f)(1).) The standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) Moreover, section 1202.4 does not require a particular type of proof. (*Id.* at pp. 1542-1543.) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*Id.* at p. 1543.) On appeal, we review the court's restitution order for an abuse of discretion. (*People v. Giordano*, *supra*, 42 Cal.4th 644, 663 [the deferential abuse of discretion standard considers whether the challenged order is reasonable].)

## II.

Emma was not denied due process of law by the trial court's restitution order. Although he had the right to a restitution hearing to rebut S.P.'s noneconomic losses, he did not demand an evidentiary hearing nor did he present any rebuttal evidence. As part of his plea agreement, Emma acknowledged in writing that noneconomic damages would be awarded in victim restitution and that he knew that he had a right to an evidentiary hearing. Prior to sentencing, he also received copies of the letters attached to the probation report describing the emotional distress that S.P. suffered. Emma has forfeited this argument on appeal.

All is not lost, however. Section 1202.4, subdivision (f)(1) permits a defendant to move for modification of a restitution order, and sets forth the procedure for doing so. Emma thus has an opportunity for an evidentiary hearing to readdress the amount of restitution.

## III.

The $350,000 restitution awarded for noneconomic losses rests upon a sufficient factual basis. S.P. stated that she had been fearful of Emma's retribution since 2003 and was worried that he might "come after [her]" after she rebuffed his advances in 2013. S.P. and her father described the emotional stresses that caused S.P.'s academic decline and loss of a graduate school scholarship. S.P. had received psychological

5

counseling and would continue to do so. Noneconomic damages require "subjective considerations." (*People v. Smith*, *supra*, 198 Cal.App.4th 415, 436.) "We are guided in this matter [noneconomic restitution] by the civil jury instruction concerning noneconomic loss: 'No fixed standard exists for deciding the amount of these damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.' (CACI No. 3905A (2009 ed.).)" (*Ibid.* [$750,000 noneconomic damages awarded for "years of sexual abuse"].) The trial court did not abuse its discretion in view of the emotional anguish that S.P. has experienced and will continue to experience as a result of Emma's crimes.

It matters not that the prosecutor and the trial court also referred to specific items of economic damage, i.e., loss of scholarships, counseling expenses, and college housing. The $350,000 noneconomic restitution rests upon a reasonable factual basis and is neither arbitrary nor capricious.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.


6

Ryan J. Wright, Judge

Superior Court County of Ventura

_____

Dunn & Haney, Philip Dunn, William Haney; Andrew M. Wolf for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Robert C. Schneider, Deputy Attorney General, for Plaintiff and Respondent.